UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CR-24-243-G |
| | ) | |
| RODERCUS FREEMAN, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Now before the Court is Defendant Rodercus Freeman's Motion (Doc. No. 52-1),

seeking dismissal of the Indictment and the suppression of all evidence related to the charge

against him.  The Government has filed a Response in opposition (Doc. No. 54).  At docket

call on June 9, 2025, the Court orally denied Defendant's Motion, stating that a detailed

written order would follow.[1]

*I.      Relevant Background*

On June 17, 2024, a federal grand jury returned a one-count Indictment (Doc. No.

1), charging Defendant with assault on a federal officer in violation of 18 U.S.C. §

111(a)(1).  Specifically, the Indictment alleges that Defendant "forcibly assaulted, resisted,

opposed, impeded, intimidated, and interfered with B.D[.], an officer and employee of the

---

[1] After the Court advised the parties of its ruling, Defendant announced that he would plead guilty to the single-count Indictment.  Following an opportunity for Defendant to consult with stand-by counsel if he chose, and to negotiate with counsel for the Government if he chose, Defendant reiterated his decision to plead guilty.  The Court then conducted a thorough plea colloquy and determined that Defendant was knowingly and voluntarily pleading guilty to the Indictment.

Federal Bureau of Prisons, an agency of the United States government, as designated by

Title 18, United States Code, Section 1114, and his actions involved physical contact with

B.D., while she was engaged in, and on account of, the performance of her official duties."

*Id.* at 1.

As further outlined in the Government's Response, the Government seeks to present

evidence that Defendant, while being held at the Federal Transfer Center in Oklahoma

City, Oklahoma, "assaulted Federal Bureau of Prisons ('BOP') Senior Officer Specialist

('SIS') B.D." by approaching her "from behind and plac[ing] her in a chokehold." Gov't's

Resp. at 1-2. The Government alleges that Defendant released B.D. when she hit her body

alarm, and other officers then arrived. *See id.*

There is no disagreement that the disputed interaction took place in Defendant's

cell. *See* Def.'s Mot. at 1-2; Gov't's Resp. at 1. Security camera footage of the common

area outside Defendant's cell shows B.D. approaching the cell, Defendant stepping out,

B.D. entering, and then Defendant entering the cell several moments later. The

Government and Defendant disagree about the reason why B.D. entered Defendant's cell.

Defendant argues that B.D. was conducting a search. *See* Def.'s Mot. at 2. The

Government alleges, based on an incident report written by B.D., that B.D. went to and

entered Defendant's cell at his request to check on a malfunctioning vent. *See* Gov't Resp.

at 1; *see also id.* Ex. 1 (Doc. No. 54-1) at 1.

II.    *Discussion*

Defendant's request to represent himself and to have standby counsel appointed was

granted after the Court found that Defendant had knowingly, intelligently, and voluntarily

waived his Sixth Amendment right to counsel. *See* Order of Apr. 18, 2025 (Doc. No. 50).

Defendant subsequently filed the instant Motion. Pro se filings "are to be construed

liberally," but the Court will not "assume the role of advocate for the pro se litigant." *Hall*

*v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Defendant seeks dismissal of the Indictment because the evidence against him is

insufficient, violations of federal statutes and BOP policy require the suppression of

evidence, his right to confront the witnesses against him was violated when the

Government called no witnesses at his detention hearing, and his constitutional rights and

statutory speedy-trial right were violated when he was not given an opportunity to

personally object prior to the Court ordering a competency evaluation. *See* Def.'s Mot. at

1-4. Defendant also invokes due process and fundamental fairness as a basis for his

requested relief. *See id.* at 4.

As a threshold matter, the Court finds that a hearing on Defendant's Motion is not

necessary and would not materially assist the Court in making its determinations. *See*

*United States v. Chavez-Marquez*, 66 F.3d 259, 261 (10th Cir. 1995) ("A trial court is

required to grant a suppression hearing only when a defendant presents facts justifying

relief." (internal quotation marks omitted)); *see also United States v. Gonzalez-Fierro*, 949

F.3d 512, 524 n.11 (10th Cir. 2020).

> ### A. Defendant's challenges based on sufficiency of the Government's evidence

Defendant argues that the Indictment should be dismissed because the evidence the

Government will present at trial is insufficient to prove the criminal charge against

Defendant.  In so doing, Defendant points out various problems with the Government's

expected evidence.  He argues that the security camera footage showing the common area

outside his cell is "blurry" and no footage exists showing "a crime or physical contact."

Def.'s Mot. at 1.[2]  He argues that B.D. has made inconsistent statements.  *See id.* at 2.

Defendant further notes that swabs were collected from B.D. and him, and that a medical

examination of B.D. occurred following the alleged altercation, but that B.D. did not go to

"outside medical."  *Id.*  Based on these deficiencies, Defendant argues that "there is no

evidence of guilt to hold a trial over."  *Id.*

In response, the Government argues that while the security camera footage does not

directly show the events in Defendant's cell, the footage is consistent with B.D.'s account

of the incident.  *See* Gov't's Resp. at 3.  The Government also asserts that Defendant has

not raised certain issues with the required specificity and, in any event, Defendant's

contentions do not warrant dismissal.  *See id.* at 5 n.3.

Rule 12 of the Federal Rules of Criminal Procedure generally governs pretrial

motions, including motions to dismiss.  Rule 12(b) provides that "[a] party may raise by

pretrial motion any defense, objection, or request that the court can determine without a

trial on the merits."  Fed. R. Crim. P. 12(b)(1).  Rule 12(b)(3)(B)(v) permits a defendant to

challenge an indictment for "failure to state an offense," but when considering such a

challenge the Court is generally "bound by the factual allegations contained within the four

corners of the indictment."  *Id.* R. 12(b)(3)(B)(v); *United States v. Welch*, 327 F.3d 1081,

---

[2] The Government has provided Defendant with this security camera footage.  *See* Gov't's
Resp. at 3.  The footage was later provided to the Court for review.

1090 (10th Cir. 2003), *overruled on other grounds as recognized in United States v. McBride*, 94 F.4th 1036, 1043 n.9 (10th Cir. 2024).

Defendant does not dispute that the allegations in the Indictment, taken as true, "set[] forth the elements of the offense charged" and "put[] the defendant on fair notice of the charges against which he must defend." *United States v. Todd*, 446 F.3d 1062, 1068 (10th Cir. 2006) (internal quotation marks omitted); *see* Indictment at 1-2. Instead, as discussed above, Defendant argues that the available evidence is flawed and does not support a finding that he committed the stated offense.

As the text of Rule 12(b) and the cited authority plainly contemplate, it is the exclusive role of the jury to decide contested issues of fact. "Generally, the strength or weakness of the government's case, or the sufficiency of the government's evidence to support a charge, may not be challenged by a pretrial motion." *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994). "The *jury* is . . . charged with determining the general issue of a defendant's guilt or innocence," so "[f]act-finding by the district court based on evidence that goes to this question can risk trespassing on territory reserved to the jury as the ultimate finder of fact in our criminal justice system." *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (emphasis added). "If contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." *Id.*

Defendant's contentions regarding the security camera footage, B.D.'s inconsistent statements, the swabs, and a lack of an external medical examination of B.D. all go beyond the four corners of the Indictment. This type of "extra-indictment evidence" may only be

considered in deciding a Rule 12(b) motion when the evidence is "agreed to by the parties"—i.e., when it is "undisputed in the sense that . . . neither side ha[s] expressed any objection to its consideration or any objection to its completeness and accuracy." *Pope*, 613 F.3d at 1261 (emphasis omitted). Defendant has not established that the undisputed aspects of the evidence he cites would preclude a reasonable jury from finding in favor of the Government. Nor has he otherwise shown that it is "clear from the parties' agreed representations about the facts surrounding the commission of the alleged offense that a trial of the general issue would serve no purpose." *Id.* (emphasis omitted). Indeed, the Government's Response contends that the parties contest events that happened prior to, during, and after B.D.'s entry into Defendant's cell.

Accordingly, Defendant's request for pretrial dismissal based on insufficiency of the evidence must be denied and the Government's allegations against Defendant must be resolved by a trial by jury.[3]

### B. Defendant's Confrontation Clause challenge

Defendant argues that his Sixth Amendment Confrontation Clause right was violated when the Government did not call any witnesses at his August 2, 2024 detention hearing. *See* Def.'s Mot. at 3. The Government responds that rights granted under the Confrontation Clause do not apply at a detention hearing. *See* Gov't's Resp. at 5.

The Sixth Amendment to the United States Constitution provides that "[i]n all

---

[3] As noted above, after the Court's oral announcement of the denial of Defendant's Motion, but prior to issuance of this written order, Defendant decided to—and did—plead guilty to the Indictment. In so doing, Defendant expressly waived his right to a jury trial.

criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. This right to confrontation applies during trial, and courts "uniformly have held" that it does not apply to pretrial hearings. *United States v. Hernandez*, 778 F. Supp. 2d 1211, 1219-27 (D.N.M. 2011) ("[T]he Supreme Court has consistently held that the Sixth Amendment is a trial right."); *see also Bowens v. Allbaugh*, No. CIV-17-61-R, 2019 WL 943415, at *8 (W.D. Okla. Feb. 26, 2019) (collecting cases).

As a result, there was no violation of Defendant's Sixth Amendment Confrontation Clause right at the August 2, 2024 detention hearing that would warrant dismissal of the Indictment or suppression of the Government's evidence.

### C. *Defendant's challenges based on alleged statutory and policy violations*

#### 1. Failure to Locate Cameras to Record Events in Defendant's Cell

Defendant argues that the Prison Camera Reform Act of 2021 ("PCRA") and the Eighth Amendment "ensure the health and safety of staff/inmates by requiring cameras in proper areas." Def.'s Mot. at 1. Liberally construed, Defendant argues that the Federal Transfer Center's failure to position cameras to record what happened in Defendant's cell violated the PCRA,[4] as well as the requirement of 18 U.S.C. § 4042 that federal prisons

---

[4] The PCRA is codified as a note to 18 U.S.C. § 4042. *See* 18 U.S.C. § 4042 note (Prison Camera Reform Act of 2021). This codification does not negatively affect its status as law because a provision shall be read "in the context of the entire [a]ct, rather in the context of the 'arrangement' selected by the codifier." *United States v. Weldon*, 377 U.S. 95, 98 n.4 (1964); *see also Conyers v. Merit Sys. Prot. Bd.*, 388 F.3d 1380, 1382 n.2 (Fed. Cir. 2004) ("[T]he fact that [a] provision was codified as a statutory note is of no moment."). The PCRA recognizes the need to improve security camera systems in federal prison facilities. *See* Prison Camera Reform Act of 2021, Pub. L. No. 117-321, § 3, 136 Stat. 4430, 4431-

must safeguard the safety of prisoners. *See id.*[5]

The Government responds that the fact that events within the cell not were not recorded does not constitute a PCRA violation and that the camera footage was preserved and provided to Defendant consistent with the PCRA's purpose to provide video evidence. *See* Gov't's Resp. at 3-4.

Neither § 4042 nor the PCRA mandates where BOP officials place cameras or specifies that cameras must record inside inmates' cells. To the contrary, courts in civil cases challenging actions or inaction of BOP officials have found that such officials possess discretion in carrying out § 4042's mandates. *See Mathison v. United States*, No. 13-cv-00110, 2014 WL 717153, at *7 (D. Colo. Feb. 24, 2014) (collecting cases); *see also Bell v. Wolfish*, 441 U.S. 520, 547 (1979) ("Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."). And, even assuming there was a violation of § 4042 or the PCRA, Defendant has not shown that such a violation would warrant dismissal of the Indictment or suppression of evidence.

---

32 (2022). Under the PCRA, the BOP Director must assess the current systems, formulate a plan to improve those systems, and submit the plan to certain congressional committees. *See id.* § 3(a), 136 Stat. at 4431. The PCRA further provides that the improvement plan shall be instituted within three years of the plan's submission, subject to the availability of funding. *See id.* § 3(c), 136 Stat. at 4432.

[5] Pursuant to 18 U.S.C. § 4042, BOP officials "shall," among other responsibilities, "provide suitable quarters" for, "provide for the safekeeping" of, and "provide for the protection" of all inmates held in BOP custody. 18 U.S.C. § 4042(a)(2), (3).

2. Violation of BOP Search Policy

Defendant argues that B.D. violated BOP policy "by conducting a search by herself" rather than with another officer and that, as a result, the Court should not admit into evidence the results of the search, including B.D.'s testimony or other statements about what happened inside the cell.  Def.'s Mot. at 2.  The Government responds that no policy violation occurred because B.D. was not conducting a search but instead went into Defendant's cell upon his request.  *See* Gov't's Resp. at 4.  Additionally, the Government argues that a violation of BOP policy does not constitute a violation of Defendant's right to due process or any other constitutional right.  *See id.*

When a defendant seeks to have evidence suppressed, he or she must show—to begin—that the evidence "would not have come to light but for the government's unconstitutional conduct."  *United States v. Sanchez*, 608 F.3d 685, 691 (10th Cir. 2010) (emphasis and internal quotation marks omitted).  When such but-for causation has been shown, the court considers whether to exclude use of the evidence against the victim of that conduct in a subsequent criminal proceeding.  *See id.*; *United States v. Knox*, 883 F.3d 1262, 1273 (10th Cir. 2018).  This "exclusionary rule" was not designed "to vindicate a broad, general right to be free of agency action not authorized by law, but rather to protect specific, constitutionally protected rights," including those protected by the Fourth, Fifth, and Sixth Amendments.  *United States v. Minjares-Alvarez*, 264 F.3d 980, 986 (10th Cir. 2001) (internal quotation marks omitted).  The exclusionary rule's principal "purpose is to deter future unlawful police conduct."  *Knox*, 883 F.3d at 1273 (internal quotation marks omitted).

Defendant's request for relief cannot be grounded in the Fourth Amendment's protection against unlawful searches because "the Fourth Amendment has no applicability to a prison cell." *Hudson v. Palmer*, 468 U.S. 517, 536 (1984). While the Eighth Amendment safeguards the health and security of prisoners, it does not prohibit searches of prison cells. And, while the Fourteenth Amendment's Due Process Clause safeguards certain rights of prisoners, Defendant has not shown that a failure to observe BOP policy for searches of prison cells would constitute a violation of the Fourteenth Amendment. The Supreme Court has explained that "[p]rison regulations are primarily designed to guide correctional officials in the administration" of their duties, not "to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995); *see also Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) ("[A] failure to adhere to administrative regulations does not equate to a constitutional violation.").

In sum, even assuming that B.D. violated BOP policy "by conducting a search by herself" rather than with another officer, *see* Def.'s Mot. at 2, Defendant has not shown that such a policy violation constitutes "unconstitutional conduct" that may require the exclusion of evidence obtained from such a search. *Sanchez*, 608 F.3d at 691. Thus, Defendant's request to suppress evidence on this basis shall be denied.

> ### D. *Defendant's challenge based on the events surrounding his competency evaluation*

On October 23, 2024, Defendant's attorney filed on Defendant's behalf a motion for a hearing to determine whether Defendant was presently incompetent pursuant to 18 U.S.C. § 4241(a). *See* Def.'s Mot. Determination of Competency (Doc. No. 28). The

10

motion requested that a psychiatric and/or psychological examination of Defendant be conducted prior to the hearing. *See id.* at 1-2. The Court granted this request and ordered, pursuant to 18 U.S.C. § 4241(b), that Defendant be committed to the custody of the Attorney General for a competency examination. *See* Order of Nov. 7, 2024 (Doc. No. 30) at 1-2. Following that examination and receipt of the results, the Court conducted a hearing and found that Defendant was competent and that the charge against him could proceed. *See* Order of Mar. 24, 2025 (Doc. No. 41) at 1-3.

In his Motion, Defendant asserts that he disagreed with his then-counsel's decision to request a competency hearing and argues that his due process rights were violated when Defendant was transferred to a BOP facility for a competency evaluation without his permission or an opportunity to object. *See* Def.'s Mot at 3. Defendant has additionally argued that subjecting him to an unnecessary competency examination resulted in a violation of his rights under the Speedy Trial Act. *See id.*

### 1. Due Process

Citing *Vitek v. Jones*, 445 U.S. 480 (1980), Defendant claims that he was denied due process because he was entitled to a hearing to allow him to personally object prior to being transferred to a facility in another state for the purpose of a competency examination. *See* Def.'s Mot. at 3. The Government responds that the authority Defendant cites is inapplicable and that the proceedings to determine Defendant's competency complied with the statutory requirements set out in 18 U.S.C. § 4241(a) and (b). *See* Gov't's Resp. at 5.

The procedures to determine a criminal defendant's competency are set forth in 18 U.S.C. § 4241, including as follows:

11

> [T]he defendant or the attorney for the Government may file a motion for a
> hearing to determine the mental competency of the defendant. The court
> shall grant the motion, or shall order such a hearing on its own motion, if
> there is reasonable cause to believe that the defendant may presently be
> suffering from a mental disease or defect rendering him mentally
> incompetent to the extent that he is unable to understand the nature and
> consequences of the proceedings against him or to assist properly in his
> defense.
>
> . . . Prior to the date of the hearing, the court may order that a psychiatric or
> psychological examination of the defendant be conducted, and that a
> psychiatric or psychological report be filed with the court . . . .

18 U.S.C. § 4241(a), (b).

Here, Defendant's October 23, 2024 motion seeking a competency hearing invoked

§ 4241 and did not suggest that Defendant personally objected to application of the

statutory procedures. On its face, that motion was proper under § 4241(a).[6] In turn, the

Court in its Order of November 7, 2024, initiated the process for conducting a competency

hearing, finding—as required by § 4241(a)—that "reasonable cause" existed to believe

Defendant may be mentally incompetent. Order of Nov. 7, 2024 (Doc. No. 30) at 1. The

Order directed, in accordance with § 4241(b), that Defendant be examined in advance of

the competency hearing. *See id.* at 1. In the Order, the Court authorized transfer of

Defendant for the purpose of conducting such an examination, subject to a time restriction

consistent with § 4241. *See id.* at 1-2.

---

[6] In the Motion, Defendant's attorney described interactions between Defendant and him
that, in the attorney's view, raised questions about Defendant's competency. *See* Def.'s
Mot. Determination of Competency at 2. Such an account may constitute strong evidence
of the need for a competency hearing because, as noted by the Tenth Circuit, "defense
counsel has the most intimate association with the defendant." *United States v. Boigegrain*,
155 F.3d 1181, 1188 (10th Cir. 1998).

After this transfer and examination, the Court held a hearing where Defendant had the "right to be represented by counsel, to present evidence and argument, to testify, to subpoena and call witnesses, and to confront and cross-examine any witnesses called by the Government." Order of Mar. 24, 2025, at 2; *see* Minute Entry (Doc. No. 40); 18 U.S.C. §§ 4241(c), 4247(d). As noted, the Court subsequently found Defendant competent. *See* Order of Mar. 24, 2025, at 2-3. Because the transfer and examination of Defendant was authorized by § 4241 and complied with the procedure prescribed by that statute, Defendant has not shown a violation of his federal rights in this regard.

Defendant's citation to *Vitek v. Jones* likewise does not support the conclusion that Defendant's federal rights were violated. In that case, the Supreme Court held that a prisoner was entitled to due process, including notice and an opportunity to be heard, before a state could "classify him as mentally ill and subject him to involuntary psychiatric treatment," including indefinite transfer from a prison to a "mental hospital." *Vitek*, 445 U.S. at 482-83, 493-94. Here, the Order to transfer Defendant was made pursuant to a request by Defendant through his attorney, was for the express purpose of "examination" prior to a competency hearing rather than a final decision of hospitalization and treatment, and was for a limited time period rather than for an indefinite duration. Order of Nov. 7, 2024 (Doc. No. 30) at 1. Such restrictions are consistent with 18 U.S.C. § 4241 and render Defendant's transfer to the custody of the Attorney General materially different than the improper transfer in *Vitek*.

Further, there is no reasonable basis for Defendant to contend that the Court violated Defendant's right to procedural due process by ordering Defendant to be transferred and

13

examined prior to holding a competency hearing.  Section 4241(b) does not require a hearing be conducted before the issuance of an order for examination.  *See* 18 U.S.C. § 4241(b) ("Prior to the date of the hearing [to determine the mental competency of the defendant], the court may order that a psychiatric or psychological examination of the defendant be conducted.").  And review of the record shows that Defendant did not request a hearing prior to transfer and examination (through his then-counsel or otherwise) or object to the Court's November 7, 2024 Order (through his then-counsel or otherwise).

As to substantive due process, the Tenth Circuit has explained that "the detainment of an individual prior to trial for the purpose of obtaining a mental evaluation" requires a "sufficiently compelling" justification.  *United States v. Deters*, 143 F.3d 577, 583 (10th Cir. 1998).  In *Deters*, the defendant's attorney specifically requested an "outpatient" competency determination prior to trial.  *Id.* at 578.  The district court granted the request for an evaluation but ordered that the defendant be in custody during the examination.  *See id.*  The defendant appealed the commitment order on substantive due process grounds. *See id.* at 582.  The Tenth Circuit affirmed, holding that the government interests of ensuring the defendant was available for trial and in providing a speedy trial were "sufficiently weighty" to justify detaining the defendant during her examination.  *Id.* at 583-84.

Here, the need for an effective evaluation of Defendant's competency to stand trial warranted any deprivation of liberty caused by transferring Defendant to a different location and subjecting him to a competency examination.  The Court already had determined that Defendant (who was already serving a term of imprisonment) was required

to be detained pending trial.  *See* Order of Aug. 2, 2024 (Doc. No. 16) at 1-3 ("[Defendant] is serving a BOP sentence until 2040."); 18 U.S.C. § 3142(g).  The same circumstances, and the same "risk that [D]efendant would not appear for trial," clearly precluded any kind of alternative examination arrangement.  *Deters*, 143 F.3d at 583-84.

Finally, even if Defendant had shown a violation of his due process rights, he offers no support for the assumption that the remedy for such a violation would be dismissal of the Indictment.  For all of these reasons, relief is not warranted on this basis.

### 2.  Speedy Trial Act

Defendant also argues that the conducting of his competency examination caused a violation of the Speedy Trial Act and, on that basis, the Indictment should be dismissed. *See* Def.'s Mot. at 3.

The Speedy Trial Act, 18 U.S.C. § 3161, "gives effect to a Defendant's Sixth Amendment right to a speedy trial."  *United States v. Nevarez*, 55 F.4th 1261, 1263 (10th Cir. 2022); *see also* U.S. Const. amend. VI.  The Speedy Trial Act provides that a person accused of a crime is generally entitled to a trial within 70 days of the filing of the charge or the accused's appearance on that charge, whichever is later.  *See* 18 U.S.C. § 3161(c). When moving the trial would cause a violation of this statutory time limit, a court may only continue the trial if it finds that the period of delay is excludable under a specific provision of the Act.  *See id.* § 3161(h).  "[D]elay resulting from any proceeding, including any examinations, to determine the mental competency" of a defendant "shall be excluded . . . in computing the time within which the trial . . . must commence."  18 U.S.C. § 3161(h)(1)(A).  Additionally, "[a]ny period of delay resulting from a continuance granted

15

by any judge on his own motion or at the request of the defendant or his counsel" will be

excluded if the judge finds "that the ends of justice served by the granting of such

continuance outweigh the best interests of the public and the defendant in a speedy trial."

*Id.* § 3161(h)(7)(A).  "If a defendant is not brought to trial within the time limit required

by [§] 3161(c) as extended by [§] 3161(h), the . . . indictment shall be dismissed on motion

of the defendant."  *Id.* § 3162(a)(2).  The burden is on the defendant to sufficiently support

a dismissal request based on a Speedy Trial Act violation.  *See Nevarez*, 55 F.4th at 1263.

In a November 7, 2024 order accompanying the grant of Defendant's motion for a

competency hearing and directing an examination in advance of that hearing, the Court

expressly found that "the delay that will be caused while Defendant undergoes the

psychiatric examination . . . , and while the parties and the Court consider the result of that

examination, is excludable for purposes of the Speedy Trial Act under 18 U.S.C. §

3161(h)(1)(A)."  Order of Nov. 7, 2024 (Doc. No. 31) at 1-2.  The Court additionally found

"that the ends of justice are served by continuing this matter until the psychiatric

examination has been completed and the competency issues resolved."  *Id.* at 2 (citing 18

U.S.C. § 3161(h)(7)).  Because Defendant has not shown any error in these findings or

other violation of the Speedy Trial Act,[7] relief is not warranted on this basis.

### E.  Defendant's general due process and fundamental fairness challenge

Finally, Defendant argues that the Fourteenth Amendment sets forth a fundamental

fairness analysis and that the "Due Process clause provides relief when evidence is so

---

[7] Each continuance in this matter has been accompanied by a finding of the Court that the
period of delay is excludable under the Speedy Trial Act.

prejudicial it renders a trial fundamentally unfair." Def.'s Mot. at 4. Defendant cites to two cases, both appeals of denials of petitions for habeas corpus by state prisoners, to support his fundamental fairness claim. *See id.*; *Ochoa v. Workman*, 669 F.3d 1130 (10th Cir. 2012); *Knighton v. Mullin*, 293 F.3d 1165 (10th Cir. 2002). The Government did not address this argument.

In both of Defendant's cited authorities, the Tenth Circuit applied a due process-fundamental fairness analysis in connection with habeas review of already completed state-court death penalty trials. *See Ochoa*, 669 F.3d at 1132-33, 1143-46; *Knighton*, 293 F.3d at 1170-72. Neither decision stands for the proposition that such a fundamental fairness inquiry would serve to bar a federal prosecution prior to trial or prevent the introduction of evidence at that trial. Defendant has not shown that the Indictment should be dismissed or evidence suppressed on this basis.

## CONCLUSION

For the reasons explained herein, Defendant's Motion (Doc. No. 52-1) is DENIED.

IT IS SO ORDERED this 13th day of June, 2025.

CHARLES B. GOODWIN
United States District Judge